# IN THE SUPREME COURT OF IOWA

No. 13–1877

Filed May 22, 2015

**JOHN BAKER** and **VALERIE BAKER,**

Appellants,

vs.

**CITY OF IOWA CITY, IOWA** and **IOWA CITY HUMAN RIGHTS COMMISSION,**

Appellees.

---

Appeal from the Iowa District Court for Johnson County, Paul D. Miller and Marsha M. Beckelman, Judges.

Plaintiffs asserting a federal civil rights claim against a city and a human rights commission appeal a district court grant of summary judgment in favor of the city and the commission. The city and the commission cross-appeal the district court's decision to allow the plaintiffs to amend their petition. **AFFIRMED.**

Michael J. Pitton of Pitton Law P.C., Iowa City, for appellants.

Susan M. Dulek, Assistant City Attorney, Iowa City, for appellees.

**WIGGINS, Justice.**

Employers appeal the district court's grant of summary judgment to a city and a human rights commission based on the conclusion that the city and the commission did not violate the employers' constitutional rights when the city and the commission attempted to enforce an antidiscrimination ordinance. The city and the commission cross-appealed the district court's decision to allow the employers to amend their petition before the court granted the city and the commission's motion for summary judgment.

The employers allege the city and the commission's enforcement of an antidiscrimination ordinance, which we previously held was unconstitutional as exceeding the city's home rule authority, violated their federal constitutional rights of freedom of association, freedom of speech, due process, and equal protection. Although we previously found the ordinance as an unconstitutional extension of the city's home rule authority under the Iowa Constitution, in this appeal, we find the ordinance did not violate the employers' federal constitutional rights. Thus, the city and the commission are not liable for damages or attorney fees under 42 U.S.C. § 1983 and § 1988 (2012). We also find the district court did not abuse its discretion when it allowed the employers to amend their petition. Therefore, we affirm the district court's grant of summary judgment in favor of the city and the commission and we affirm the court's grant of the motion to amend in favor of the Bakers.

## I. Background Facts and Proceedings.

This case is before us for the second time. *See Baker v. City of Iowa City* (*Baker I*), 750 N.W.2d 93 (Iowa 2008).[1] The facts of the case

---

[1]In *Baker I*, only John Baker appealed. In this case, both John and his spouse Valerie appealed. In this appeal, we refer to the Bakers, even though Valerie did not participate in the first appeal.

have not changed. The Bakers own property in Iowa City and employ one or two people to manage the property because the Bakers live out of state. *Id.* at 95. In 2003, the current resident managers were moving out and the Bakers posted a job opening for a new resident manager. *Id.*

The Bakers turned down one applicant for the position because she failed to provide requested references and she indicated her eleven-year-old son would perform the outside property maintenance required by the position. *Id.* The Bakers were concerned for the child's safety and worried about violating Iowa's child labor laws. *Id.* After the Bakers rejected the woman for the position, she filed a complaint with the Iowa City Human Rights Commission claiming employment and housing discrimination. *Id.*

The City[2] claimed the Bakers' rejection of the woman for the position violated the City's ordinance making it unlawful for

> any employer to refuse to hire, accept, register, classify, upgrade or refer for employment, or to otherwise discriminate in employment against any other person or to discharge any employee because of age, color, creed, disability, gender identity, marital status, national origin, race, religion, sex or sexual orientation.

Iowa City, Iowa, City Code § 2-3-1(A). The ordinance applied to employers who employ one or more employees. *Id.* § 2-1-1.

During the pendency of the civil rights case the Bakers filed a petition against the City seeking damages under 42 U.S.C. § 1983. The Bakers claimed the city ordinance was unconstitutional under the home rule provisions of the Iowa Constitution due to the irreconcilable conflict between the ordinance and the provisions of the Iowa Code. *Baker I,* 750

---

[2]For the sake of brevity, we refer to the City of Iowa City and the Iowa City Human Rights Commission collectively as the City.

N.W.2d at 95. The Code provision exempted an employer who regularly employed fewer than four individuals, while the ordinance did not contain such an exemption. *Id.* at 96. The Bakers also claimed the enforcement of the ordinance against them violated their federal constitutional rights of due process and equal protection. *Id.* at 98. Initially, the Bakers' lawsuit did not include a claim for a violation of their rights of freedom of association and freedom of speech under the First Amendment.

After the Bakers filed their initial petition, they filed a motion to amend the petition to include claims that the City also violated their rights of freedom of association and freedom of speech. The Bakers also filed a motion for summary judgment claiming the ordinance was unconstitutional on its face. *Id.* at 96. The City resisted the motion and filed its own cross-motion for summary judgment. *Id.* at 96–97.

During the pendency of the district court proceedings and prior to the court ruling on the outstanding motions, the Bakers settled the civil rights proceeding. *Id.* at 96. Thereafter, the district court held the settlement of the underlying civil rights proceeding rendered all pending motions moot and did not rule on the Bakers' motion to amend and entered summary judgment for the City. *Id.* at 97.

The Bakers appealed this ruling. We reversed the district court finding the Bakers' 42 U.S.C. § 1983 claim was not moot. *Id.* at 98. We also held the city ordinance prohibiting discrimination by all employers unconstitutional under the Iowa Constitution because the ordinance exceeded the City's home rule authority. *Id.* at 99–102. We remanded the case for further proceedings. *Id.* at 103.

On remand, the Bakers refiled their motion to amend the petition to include First Amendment freedom of speech and freedom of

association claims. The City resisted the amendment arguing (1) the amendment substantially changed the issues before the court and (2) the Bakers waived their right to add the new issues on remand because they failed to brief the dismissal of their motion to amend in the initial appeal. The district court granted the Bakers' motion to amend.

The parties again filed cross-motions for summary judgment. The Bakers argued the City was liable under 42 U.S.C. § 1983 as a matter of law for attempting to enforce the antidiscrimination ordinance in violation of the Bakers' First Amendment rights of freedom of association and freedom of speech, and their federal constitutional rights of due process and equal protection. The district court denied the Bakers' motion for summary judgment and granted summary judgment in favor of the City, finding a 42 U.S.C. § 1983 violation did not occur. The Bakers appealed the decision finding the City did not violate their constitutional rights under the Federal Constitution. The City cross-appealed the district court ruling allowing the Bakers to amend their petition to include the First Amendment freedom of speech and freedom of association claims.

**II. Issues.**

We must first decide if the district court was correct in allowing the Bakers' amendment adding First Amendment freedom of speech and freedom of association claims. Then we must decide whether the City violated the Bakers' federal constitutional rights of freedom of association, freedom of speech, due process, and equal protection such that the City is liable for these violations under 42 U.S.C. § 1983 and liable for attorney's fees under 42 U.S.C. § 1988.

### III. Scope of Review.

We review a district court's grant of a motion to amend the parties' petition for abuse of discretion. *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 766 (Iowa 2002). An abuse of discretion occurs when the district court bases its decision on grounds clearly untenable or to an extent clearly unreasonable. *Id.*

We review summary judgment rulings for correction of errors at law. *Baker I*, 750 N.W.2d at 97. The moving party is entitled to summary judgment if there are no disputed issues of material fact. *City of Fairfield v. Harper Drilling Co.*, 692 N.W.2d 681, 683 (Iowa 2005). "We can resolve a matter on summary judgment if the record reveals a conflict only concerns the legal consequences of undisputed facts." *Id.*

### IV. Whether the District Court Was Correct to Allow the Bakers to Amend Their Petition to Include First Amendment Freedom of Speech and Freedom of Association Claims.

We must first address the City's claim that the Bakers' constitutional arguments regarding freedom of association and freedom of speech are not properly before the court. The City claims the district court erred when it granted the Bakers' motion to amend their petition upon remand. The City also argues the Bakers failed to appeal the original denial of their motion to amend in the 2008 appeal and therefore, waived the opportunity to amend thereafter.

District courts have considerable discretion to allow amendments at any point in the litigation, and we will only reverse the district court's decision if it has abused that discretion. *See Bd. of Adjustment v. Ruble*, 193 N.W.2d 497, 507 (Iowa 1972). A district court has the same discretion to grant a party's amendment on remand as it did in the initial proceedings. *See Webber v. E.K. Larimer Hardware Co.*, 234 Iowa 1381,

1389, 15 N.W.2d 286, 290 (1944) ("[U]pon the remand of this case . . . the lower court will have the same discretion to permit plaintiff to amend his petition as if the case had not been tried. We have so held in a long line of decisions.").

We have recognized in numerous cases that permitting amendments should be the rule and denial should be the exception. *See Chao v. City of Waterloo*, 346 N.W.2d 822, 825 (Iowa 1984); *Ackerman v. Lauver*, 242 N.W.2d 342, 345 (Iowa 1976). The district court should allow amendments so long as the amendment does not substantially change the issues in the case. *Rife*, 641 N.W.2d at 767. We also permit amendments that substantially change the issues "if the opposing party is not prejudiced or unfairly surprised" by the changes. *Id.* Further, we permit amendments at any stage of the litigation, and we even permit amendments to conform to the proof offered at trial. *See Allison-Kesley Ag Ctr., Inc. v. Hildebrand*, 485 N.W.2d 841, 846 (Iowa 1992).

The Bakers moved to amend the initial petition in 2005 with these exact claims and addressed the claims in their brief to this court in 2008. Additionally, the district court in its 2005 dismissal declined to rule on the amendment on the incorrect determination that the Bakers' claims were moot. Our 2008 decision determined the case was not moot but did not rule on the issue of the amendments, thus we did not prohibit the Bakers from renewing the motion to amend on remand. Given this, we find the district court did not abuse its discretion because the district court's decision to grant the amendment on remand did not prejudice or unfairly surprise the City. Therefore, the issues of whether the City violated the Bakers' First Amendment rights of freedom of speech and freedom of association are properly before us.

## V.  Federal Civil Rights Claim.

The Bakers brought their action against the City under 42 U.S.C. § 1983.  This section of the United States Code allows redress for individuals "whose constitutional rights were deprived by persons acting under color of state law."  *Minor v. State*, 819 N.W.2d 383, 393 (Iowa 2012).  To be successful on a 42 U.S.C. § 1983 claim a plaintiff must show

> (1) that the defendant deprived the plaintiff of a right secured by the constitution and laws of the United States, (2) that the defendant acted under color of state law, (3) that the conduct was a proximate cause of the plaintiff's damage, and (4) the amount of damages.

*Leydens v. City of Des Moines*, 484 N.W.2d 594, 596 (Iowa 1992).  The fighting issue between the Bakers and the City is whether the City violated the Bakers' federal constitutional rights by enforcing the ordinance.  The district court concluded in its ruling on the City's motion for summary judgment that the City's enforcement of the ordinance that failed to contain an exemption for small employers from the City's employment discrimination laws did not violate the Bakers' constitutional rights.

**A.  Freedom of Association.**  The First Amendment embodies the freedom of association, the right to "enter into and maintain certain intimate human relationships [without] undue intrusion by the State."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18, 104 S. Ct. 3244, 3249, 82 L. Ed. 2d 462, 471 (1984).

> [T]he constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others.  Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty.

*Id.* at 619, 104 S. Ct. at 3250, 82 L. Ed. 2d at 472. This court has recognized the *notions* of freedom of association guided the general assembly's policy decision behind the exemption for small employers found in Iowa Code section 216.6(6)(*a*) (2003). *See Baker I*, 750 N.W.2d at 101–02. In *Baker I*, however, we did not hold that the Iowa City ordinance, which failed to exempt small employers, violated the right of freedom of association under the Federal Constitution. Rather, we held the ordinance was unconstitutional under the home rule provision of the Iowa Constitution. *Id.* at 99–102.

Iowa Code section 216.6 exempts employers employing fewer than four individuals from the state employment discrimination laws, while the exemption found in federal law exempts employers employing fewer than fifteen individuals. *Compare* 42 U.S.C. §§ 2000e(b), 2000e–2(a) (2012), *with* Iowa Code § 216.6(6)(*a*). The purpose of the federal exemption "is to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Cir. 1999); *see also Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 447, 123 S. Ct. 1673, 1678, 155 L. Ed. 2d 615, 624–25 (2003) ("[T]he congressional decision to limit the coverage of the legislation to firms with 15 or more employees has its own justification that must be respected—namely, easing entry into the market and preserving the competitive position of smaller firms.").

In Iowa, the general assembly chose to exempt fewer employers. This policy decision granting exemptions is a reflection of the state's determination that the costs to those employers with fewer than four employees would be prohibitive and reflects the legislative body decision

that "*notions* of freedom of association should preponderate over concepts of equal opportunity in these situations." Arthur Bonfield, *State Civil Rights Statutes: Some Proposals*, 49 Iowa L. Rev. 1067, 1109 (1964) [hereinafter Bonfield] (emphasis added).

The Bakers assert the City's ordinance as applied to them violated their freedom of association as a small employer. While it is true the ordinance was in direct conflict with the state law, the ordinance as applied to the Bakers does not rise to the level of violating federal constitutional rights. The First Amendment protection of freedom of association is not absolute and as the Supreme Court recognized in *Roberts*, the Constitution does not afford protection to those associations lacking in the qualities intrinsic to the freedom of association. 468 U.S. at 619–20, 104 S. Ct. at 3250–51, 82 L. Ed. 2d at 472–73.

The exemption for small employers exists "because the smallness of the employer's staff is usually likely to mean for him a rather close, intimate, personal, and constant association with his employees." Bonfield, 49 Iowa L. Rev. at 1109. However, the Bakers employ a resident manager for the property they own in Iowa City because the Bakers live out of state and are not able to manage the property remotely. We do not believe the City's application of its antidiscrimination ordinance to this primarily nonpersonal relationship between parties who reside hundreds of miles apart violates the Bakers' First Amendment right of freedom of association. Mr. Baker attempts to create a constitutionally protected relationship with his resident manager because he has close intimate ties with the property, his childhood home. However, the freedom of association protects personal relationships, not sentimental feelings towards one's property. *See Roberts*, 468 U.S. at 619–20, 104 S. Ct. at 3250–51, 82 L. Ed. 2d at 472–

73. The Bakers do not have close, intimate, personal, and constant contact with their employee from across the country. Therefore, the City's ordinance did not deprive the Bakers of their right to freedom of association.

**B. Commercial Speech.** The Bakers next argue the City violated their First Amendment right to freedom of speech because they feared additional enforcement of the ordinance by the City if they posted a job opening for a resident manager and then declined to hire an individual. In other words, they claim the City's ordinance directly regulated their speech. However, the City did nothing to prevent the Bakers from posting the job opening for a new resident manager. The City has a right to prevent discrimination by enacting an antidiscrimination ordinance or enforcing the state statute. As long as the Bakers comply with a constitutional ordinance, such as the state statute, they would not be subject to future enforcement actions.

Even if we were to find the Bakers' argument has some merit, we reject it. The Supreme Court has recognized advertisements for employment are commercial speech. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385, 93 S. Ct. 2553, 2559, 37 L. Ed. 2d 669, 677 (1973). However, the Constitution affords commercial speech less protection than other forms of protected speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562–63, 100 S. Ct. 2343, 2350, 65 L. Ed. 2d 341, 348–49 (1980). If the state forces a person to modify his or her speech to avoid prosecution, the law in question may violate the person's First Amendment rights. *See St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006). An individual can establish injury by proving he or she would have engaged in protected speech but that the

existence of the statute prevented it. *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011).

The City was in the process of enforcing the ordinance when the Bakers filed this claim. Thus, it was reasonable for the Bakers to believe if they discriminated against another applicant, the City would again enforce the ordinance, as the ordinance did not contain an exemption for small employers. Therefore, the Bakers have standing to challenge the ordinance on First Amendment grounds. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93, 108 S. Ct. 636, 642–43, 98 L. Ed. 2d 782, 793–94 (1988).

The Supreme Court in *Central Hudson* lays out a four-part test to determine if a state action deprives the right to commercial speech.

> [W]e must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566, 100 S. Ct. at 2351, 65 L. Ed. 2d at 351.

We agree with the Bakers that the speech in question concerns the posting of a job opening, a lawful and nonmisleading communication. Thus, the Bakers' job posting is a type of protected speech. *See id.*

Next, we must determine if the City's interest is substantial. *Id.* As one author noted, "Antidiscrimination law is the primary means by which organized society protects individuals against disadvantageous treatment on the basis of their membership in certain groups, archetypally racial or ethnic minority groups." Peter J. Rubin, *Equal*

*Rights, Special Rights, and the Nature of Antidiscrimination Law*, 97 Mich. L. Rev. 564, 568 (1998). We find the City has a substantial interest in ensuring all its citizens receive equal treatment in the area of employment.

Finally, we must determine if the ordinance advances the City's goal of ending discrimination, and if so, whether it is more extensive than necessary. *Cent. Hudson*, 447 U.S. at 566, 100 S. Ct. at 2351, 65 L. Ed. 2d at 351. The City did not place requirements on employers regarding who they must hire or attempt to dictate how the employer must run his or her business. The City was only telling its employers that if they were going to hire a person for a position, the employer could not discriminate based on age, color, creed, disability, gender identity, marital status, national origin, race, religion, sex, or sexual orientation. The employer still has the prerogative of employing the best person qualified for the position as long as his or her employment decision does not discriminate based on the age, color, creed, disability, gender identity, marital status, national origin, race, religion, sex, or sexual orientation of the employee. For this reason, we find the ordinance was not more extensive than necessary to serve the interest of prohibiting discrimination.

Therefore, when we apply the *Central Hudson* test to the City's ordinance, we find it did not deprive the Bakers of their exercise of commercial speech.

**C. Due Process.** The Bakers also argue the City violated their procedural and substantive due process rights under the United States Constitution.

1. *Procedural due process.* The Constitution provides no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In deciding what process is due a

party, we balance three competing interests. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976). The Supreme Court has stated these interests are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* We have previously said even though an alternative procedure may be wiser or fairer, the procedure the government entity provides does not necessarily violate due process. *Ghost Player, L.L.C. v. State*, 860 N.W.2d 323, 330 (Iowa 2015).

The private interest affected by the enforcement of the ordinance through the administrative hearing gives the Bakers substantial due process throughout the proceedings. The City first engaged in an impartial probable cause hearing prior to bringing the action against the Bakers. After finding probable cause, the Bakers were entitled to a hearing in which the City would have to prove a violation of the ordinance. At that hearing, the Bakers could have raised their constitutional arguments. If the ordinance was unconstitutional and the City attempted to enforce it after the administrative hearing, the Bakers had a meaningful right of appeal to contest the administrative findings. See Iowa Code § 17A.19(10)(*a*) (acknowledging a party to an administrative proceeding can raise the constitutionality of an agency action or rule). The probable cause hearing, followed by a hearing on the merits and a meaningful right of appeal process, satisfies the Bakers' procedural due process rights.

The Bakers chose not to let the administrative proceedings play out, but instead chose to shortcut the administrative process set up by our legislature and file their 42 U.S.C. § 1983 claim. Just because the Bakers chose to file their 42 U.S.C. § 1983 claim before the administrative proceedings concluded, does not mean the Bakers' procedural due process rights were violated.

2. *Substantive due process.* The Bakers next argue that the City's enforcement of the ordinance violated their substantive due process rights of association and free speech under the First Amendment. We have already determined in this opinion that the City's enforcement of the ordinance did not violate the Bakers' rights of association and free speech under the First Amendment. Thus, the right to hire a person in violation of the City's antidiscrimination ordinance is not a fundamental right.

Because the rights implicated are not fundamental, the appropriate level of scrutiny to apply to the City's ordinance is rational basis. *See Vance v. Bradley*, 440 U.S. 93, 97, 99 S. Ct. 939, 942–43, 59 L. Ed. 2d 171, 176 (1979). Under the rational basis test, the ordinance is valid so long as "it is rationally related to furthering a legitimate state interest." *Id.* at 97, 99 S. Ct. at 943, 59 L. Ed. 2d at 176 (internal quotation marks omitted).

The City's purpose in enacting the ordinance was to prevent employment discrimination in the city. The City has a legitimate interest in attempting to eradicate discrimination in employment so that its citizens do not receive disadvantageous treatment because of their identification within certain groups. The City's antidiscrimination ordinance furthered the City's legitimate interest to eradicate

employment discrimination in Iowa City. Thus, the enforcement of the ordinance did not violate the Bakers' due process rights.

**D. Equal Protection.** Lastly, the Bakers argue the City violated their equal protection rights under the United States Constitution because the ordinance includes an exemption for religious institutions,[3] employers hiring persons to work within the employers' home,[4] and employers hiring persons to perform personal services,[5] but did not include an exemption for small employers in the ordinance.

The Federal Equal Protection Clause provides no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The first step in determining whether a statute violates equal protection is to determine whether the statute creates different classifications between similarly situated persons. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313, 320 (1985). For the purposes of this appeal, we will assume the Bakers are similarly situated to other small employers in the

---

[3]The Iowa City ordinance provides an exemption from the ordinance to an employer who meets the following:

> Any bona fide religious institution or its educational facility, association, corporation or society with respect to any qualifications for employment based on religion when such qualifications are related to a bona fide religious purpose. A religious qualification for instructional personnel or an administrative officer, serving in a supervisory capacity of a bona fide religious educational facility or religious institution shall be presumed to be a bona fide occupational qualification.

Iowa City, Iowa, City Code § 2-3-1(F)(1).

[4]The Iowa City ordinance provides an exemption from the ordinance for "[t]he employment of individuals for work within the home of the employer if the employer or members of the family reside therein during such employment." *Id.* § 2-3-1(F)(3).

[5]The Iowa City ordinance provides an exemption from the ordinance for "[t]he employment of individuals to render personal service to the person of the employer or members of the employer's family." *Id.* § 2-3-1(F)(4).

City who receive an exemption under the ordinance. *See LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 860 (Iowa 2015) (assuming without deciding the two proffered groups were similarly situated for the purposes of an equal protection claim).

If the statute treats similarly situated persons differently, we must then determine what level of scrutiny is required. *See, e.g., Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L. Ed. 2d 786, 799 (1982) ("[W]e would not be faithful to our obligations under the Fourteenth Amendment if we applied so deferential a standard to every classification."). Therefore, it is necessary to determine the appropriate level of scrutiny to apply to the ordinance.

The Supreme Court has stated that

> [u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.

*City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S. Ct. 2513, 2516–17, 49 L. Ed. 2d 511, 517 (1976) (per curiam).

In their brief, the Bakers argue the ordinance infringes on their fundamental right to freedom of association under the First Amendment, and we should apply a strict scrutiny analysis. However, we have previously decided in this opinion the ordinance does not infringe on their fundamental right to freedom of association. Thus, we will not apply strict scrutiny. Therefore, rational basis review applies to the Bakers' federal equal protection claim.

The United States Supreme Court explained the federal rational basis test as follows:

We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data A statute is presumed constitutional and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."

*Heller v. Doe by Doe*, 509 U.S. 312, 319–21, 113 S. Ct. 2637, 2642–43, 125 L. Ed. 2d 257, 270–71 (1993) (citations omitted).

The ordinance had the legitimate government interest of eliminating discrimination against the citizens of Iowa City. The City also had a legitimate interest in exempting certain employers from the ordinance. The purpose of the religious exemption was for the City to promote the free exercise of religion by "bona fide religious organizations"

so that those organizations would locate in the city and provide religious services to its citizens. As to the exemptions regarding persons working within the employers' home, and employees hired to perform personal services, the City's interest was to provide these employers greater latitude in hiring because of the close personal relationships and greater security risks these employees pose to the employer.

Although the Bakers may disagree with the City's interest in providing certain exceptions, the rational basis test allows a City to legislate based on their concerns. The Bakers had the burden to negate every conceivable basis that may support the ordinance. They have failed to do so. Thus, the classifications included in the ordinance do not violate the Equal Protection Clause of the United States Constitution.

**E. Attorney's Fees.** In addition to claiming the City is liable under 42 U.S.C. § 1983, the Bakers are also seeking attorney's fees under 42 U.S.C. § 1988 because of the claimed federal constitutional violations. Under 42 U.S.C. § 1988, the court may award attorney's fees to a prevailing party in a 42 U.S.C. § 1983 action. 42 U.S.C. § 1988(b). However, "a plaintiff who loses on the merits of his federal claims is not a 'prevailing party' for § 1988 purposes, just because he prevails on a related pendent state-law claim." *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006). Here, the Bakers were successful in invalidating the City's ordinance under the home rule provision of the Iowa Constitution. The Bakers have not shown the City violated any of their rights under the Federal Constitution. As they were not successful on any of their federal claims, the Bakers are not a prevailing party for the purposes of a 42 U.S.C. § 1988 claim for attorney's fees.

**VI.  Conclusion and Disposition.**

We find the district court did not abuse its discretion when it allowed the plaintiffs to amend their petition.  We also find the City did not violate the Bakers' constitutional rights, and therefore, the City is not subject to liability under 42 U.S.C. § 1983 or liable for attorney's fees under 42 U.S.C. § 1988.  Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**