In re the MARRIAGE OF Dorothy F. GOODMAN and James L. Goodman

Upon the Petition of Dorothy F. Goodman a/k/a Dorothy Thurston, Appellant,

and

Concerning James L. Goodman, Appellee.

No. 03–1133.

Supreme Court of Iowa.

Nov. 10, 2004.

Rehearing Denied Jan. 4, 2004.

Patricia A. Shoff and Diane M. Stahle of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

Barry S. Kaplan of Fairall, Fairall, Kaplan & Frese, LLP, Marshalltown, for appellee.

WIGGINS, Justice.

In this appeal, we must decide whether sorority fees and a monthly cash allowance

should be included in a postsecondary education subsidy; whether a child support obligation of a party should continue between a child's high school graduation and her start of college; who is responsible for providing medical insurance for the children; and who pays for unreimbursed medical expenses of the children. We vacate the decision of the court of appeals and affirm the district court as modified by this opinion.

## I.  Background Facts and Procedure.

James and Dorothy were married on June 9, 1973. Three daughters were born during the marriage—Kellaney (a/k/a Kelly), Abby, and Molly. On May 21, 1992, the district court entered a decree of dissolution. The court awarded James and Dorothy joint legal custody of their three daughters. The decree awarded James physical custody of Kelly and Dorothy physical custody of Abby and Molly. Dorothy has since remarried. James also remarried but divorced in 1999.

The district court ordered James to pay $548 per month in child support. This child support amount was to continue until Kelly graduated from high school. At that time, the court ordered the child support obligation of James to be recalculated based upon the guidelines and circumstances existing at that time. The decree was silent as to who was responsible for college expenses.

When Kelly graduated from high school, James filed an application to modify the decree to recalculate child support and determine James's and Dorothy's obligations for Kelly's college expenses. Prior to the trial, James and Dorothy entered into an agreement to modify the original decree. On September 17, 1996, the court approved the agreement and entered a decree of modification. The district court ordered James to pay $953 per month in child support for Abby and Molly. When Abby reaches her eighteenth birthday or graduates from high school, whichever shall last occur, the court ordered the child support obligation for Molly to be recalculated based upon the guidelines and circumstances existing at that time. As to Kelly's college expenses, the modification order provided:

As long as [Kelly] attends an accredited Iowa state college or university [in] pursuit of her undergraduate degree, that the petitioner and respondent shall equally share the cost of her tuition, books, room, board, sorority fees, and $200 per month spending money; the respondent and petitioner may disperse this in any manner they see fit and upon which they can agree. In the event that one party expends more than the other for the specified expenses set forth above, they shall reimburse each other so that the effect is that they share equally in the above-enumerated costs. Each May, an accounting will occur to address any inequity in the payment of expenses. No other costs shall be included in this calculation; the parties may further provide additional support for college education to [Kelly] as they mutually consent and agree to.

The district court further ordered, "In all other respects the decree, except as modified herein, remains in full force and effect."

Before Abby graduated from high school, James filed an application to modify his child support obligation and to have the court determine his contributions toward Abby's college expenses. James sought to pay one third of the cost of Abby's college education, pursuant to Iowa Code section 598.21(5A) (Supp.2001). On December 17, 2002, the court issued its decree and concluded James and Dorothy should each be required to subsidize Abby

for one-third of her college expenses. The district court also determined Abby's sorority dues and monthly cash allowance should not be included in computing her college expenses. The court also. set James's child support obligation for Molly at $878 per month. Both James and Dorothy filed rule 1.904(b) motions to amend, enlarge, or modify the district court order. James sought to have Dorothy responsible for medical and hospitalization insurance and to have the court determine who should claim the children as dependency exemptions. Dorothy sought child support for Molly at $903 per month effective September 1, 2002; to make James responsible for subsidizing Abby for one-half the cost of her college expenses; to include sorority fees and a monthly cash allowance in the computation of Abby's eligible college expenses; and to have Molly's child support continue through the summer months between her high school graduation and the start of college. The district court modified its order and determined the appropriate date to begin James's child support obligation of $878 per month for Molly was September 1, 2001. Additionally, the court concluded Dorothy should continue to have the children covered under her husband's health insurance policy. It further ordered Dorothy to be responsible for the first $250 per year per child of uncovered medical expenses up to a maximum of $500 per year for all children and for the parties to share any uncovered medical expenses in excess of $250 per child or a maximum of $500 per year for all children in proportion to their respective net incomes. Dorothy and James appealed, but James did not raise any issues in his brief. The court of appeals affirmed the district court on all issues. This court granted Dorothy's motion for further review.

## II. Issues.

Dorothy raises the following issues on appeal and further review: (1) whether James should pay one half of Abby's eligible college expenses, including sorority fees and a monthly cash allowance; (2) whether James's child support obligation for Molly should continue during the summer months before she enrolls in college, assuming she is enrolled in college for the fall; and (3) whether James should be responsible for health insurance and unreimbursed medical expenses.

## III. Scope of Review.

Our review of an equitable action is de novo. Iowa R.App. P. 6.4. We review the construction of a dissolution decree as a matter of law. *See Sorensen v. Nelson,* 342 N.W.2d 477, 479 (Iowa 1984).

## IV. Postsecondary Education Subsidy.

The court of appeals held despite Dorothy's argument that the September 17, 1996, modification order regarding Kelly's college expenses applied to Abby and Molly, the language in the modification order did not preclude the district court from applying current Iowa law in determining college support for Abby. The court of appeals concluded the 1996 order's language was clear that the issues before the district court at that time were college support for Kelly and child support for Abby and Molly.

Iowa Code section 598.21(5A) authorizes divorced parents to help finance their child's postsecondary education under certain conditions and with certain limitations. *In re Marriage of Williams,* 595 N.W.2d 126, 130 (Iowa 1999). If good cause is shown, a court may order a postsecondary education subsidy. Iowa Code § 598.21(5A). In determining whether good cause exists, the court must consider the age and ability of the child, the child's

financial resources, whether the child is self-sustaining, and the financial situation of the parents. *Id.* § 598.21(5A)(*a*). Finally, the amount paid by each parent shall not exceed one third of the total cost of the postsecondary education. *Id.* § 598.21(5A)(*a*)(3).

■ In 2002, the legislature added Iowa Code section 598.21(5A)(*e*), which allows a court to retroactively apply the provisions of section 598.21(5A). In other words, any decree providing for support of a child in college entered before July 1, 1997, is subject to modification. *Id.* § 598.21(5A)(*e*) (2003). The parties, however, can enter into an agreement regarding the future college expenses of their children, which the court may choose to enforce. *In re Marriage of Rosenfeld,* 668 N.W.2d 840, 848 (Iowa 2003). Dorothy claims this is the case here. Moreover, she argues the court of appeals decision is wrong because it does not enforce the prior agreement of the parties. Dorothy claims she and James agreed to treat Abby's and Molly's college expenses in the same manner as Kelly's college expenses. That is they each pay one half of Abby's eligible college expenses, including sorority fees and a monthly cash allowance. James contends the prior agreement as memorialized by the September 17, 1996, order of modification did not include an agreement as to Abby's or Molly's college expenses.

## A. Was there an agreement as to Abby's or Molly's college expenses in 1996?

■ When the court merges an agreement of the parties into a dissolution decree, the court construes and enforces the decree as a final judgment of the court and not as a separate agreement between the parties. *In re Marriage of Lawson,* 409 N.W.2d 181, 182 (Iowa 1987). In constru-

ing a decree of dissolution, we have previously stated:

> The decree should be construed in accordance with its evident intention. Indeed the determinative factor is the intention of the court as gathered from all parts of the decree. Effect is to be given to that which is clearly implied as well as to that which is expressed. Of course, in determining this intent, we take the decree by its four corners and try to ascertain from it the intent as disclosed by the various provisions of the decree.

*In re Roberts' Estate,* 257 Iowa 1, 6, 131 N.W.2d 458, 461 (1964).

■ Applying these principles, we think it is clear from the four corners of the decree the provisions dealing with college expenses applied only to Kelly and not to Abby or Molly. The decree contained a number of separate paragraphs covering different issues. One paragraph specifically related to the child support for Abby and Molly. A second paragraph specifically related to college expenses for Kelly while attending an accredited Iowa college or university. This paragraph did not refer to Abby or Molly. Finally, another paragraph of the decree preserved all matters contained in the original decree, except as modified by this decree. Abby's postsecondary education subsidy must be determined on its own merits.

## B. What expenses should be included in Abby's postsecondary education subsidy?

■ The district court ordered James to provide Abby with a postsecondary education subsidy equal to one third of the costs as determined by the court. Although the district court included any sorority charges attributable to room and board in its postsecondary education subsidy, it did not include any subsidy for so-

rority dues or a monthly cash allowance. Iowa Code section 598.21(5A)(1) (Supp. 2001) provides:

> The court shall determine the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include the reasonable costs for only necessary postsecondary education expenses.

We have recently interpreted section 598.21(5A)(1) as not limiting college expenses to only tuition, room, board, and books. *In re Marriage of Vannausdle,* 668 N.W.2d 885, 889 (Iowa 2003). We recognized the reasonable and necessary costs of attending college surpass the costs of tuition, books, room, board, and supplies. *Id.* A college education is not limited to what is learned in the classroom; it includes social, cultural, and educational experiences outside the classroom. *Id.* The experiences outside the classroom impose additional expenses on the student. *Id.*

A cash allowance is necessary for a college student to participate in the social, cultural, and educational experiences outside the classroom. The parties' financial statements indicate they have the means to provide Abby with a monthly cash allowance. Accordingly, under the facts of this case, the postsecondary education subsidy should include Abby's monthly cash allowance. In 1996, the parties agreed Kelly's allowance would be $200 per month. Abby entered college in the fall of 2001. A reasonable cash allowance for Abby would be $300 per month.

As for Abby's sorority dues, it is important to note James and Dorothy agreed to split the cost of Kelly's sorority dues when she attended Iowa State University. This agreement established both James and Dorothy considered Kelly's participation in

sorority life necessary for her college experience. The record supports James and Dorothy wanted Abby to have the same college experience as Kelly. They only disagreed on their respective financial contributions to Abby's college expense. Under the unique circumstances of this case, we hold Abby's sorority dues are a necessary expense for Abby to participate in the social, cultural, and educational experiences outside the classroom.

Therefore, we modify the district court's order to require the postsecondary education subsidy for Abby to include a $300 per month cash allowance and Abby's sorority dues. These expenses shall be paid one third by James, one third by Dorothy, and one third by Abby.

## V. Child Support for Molly.

In 1992, when the district court entered the original decree of dissolution in this matter, the statutes governing child support stated obligations for child support "may include support for a child who is between the ages of eighteen and twenty-two years who ... has been accepted for admission to a college, university or community college and the next regular term has not yet begun." Iowa Code § 598.1(2) (1991). In the original decree, the district court retained "jurisdiction to consider a further application at the appropriate time to determine whether or not the child support obligation should continue" in accordance with section 598.1(2) of the 1991 Code.

In 1997, the legislature amended section 598.1. 1997 Iowa Acts ch. 175, 185 (codified at Iowa Code 598.1(9) (Supp.1997)). The amendment reduced the period of time over which a court could award child support. It only allowed a party to receive child support for a child who was between the ages of eighteen and nineteen years of age as long as the child was "engaged full-

time in completing high school graduation or equivalency requirements in a manner which is reasonably expected to result in completion of the requirements prior to the person reaching nineteen years of age." *Id.* The amendment removed the discretion of the court to award child support for a child between the ages of eighteen and twenty-two years who is enrolled or attending a course of study after high school. *Id.* James filed his application to determine the amount of support for Molly in 2001. Therefore, when the court considered James's child support obligation for Molly, the court did not have authority to award child support for Molly after she reached the age of eighteen and had graduated from high school.

■ This does not mean, however, that James and Dorothy do not have an obligation to support Molly after she graduates from high school. If Molly is entitled to a postsecondary education subsidy, the subsidy may begin upon graduation from high school if she is accepted for admission to a college, university, or community college, and the next regular term has not begun. Iowa Code § 598.1(8) (2001).

## VI. Insurance and Unreimbursed Medical Expenses.

The original divorce decree ordered James to provide medical insurance for all three girls and directed the parties to divide uncovered expenses equally. James's wife, who he has since divorced, covered the girls under her insurance policy through her employment. After James and his wife divorced, Dorothy began providing medical coverage for the children under her husband's medical insurance plan. In its modification order, the district court modified the original decree ordering Dorothy to be responsible for the health insurance. The district court found it was economically prudent for Dorothy to continue to have the children covered under her husband's medical insurance policy. The court also required Dorothy to pay unreimbursed medical expenses in accordance with the child support guidelines rule 9.10. The rule requires Dorothy to be responsible for the first $250 per year per child of uncovered medical expenses up to a maximum of $500 per year for all children and for the parties to share any uncovered medical expenses in excess of $250 per child or a maximum of $500 per year for all children in proportion to their respective net incomes. Iowa Ct. R. 9.10 (2002).

■ Dorothy first complains the issue of medical insurance and unreimbursed medical expenses were not before the district court; thus, the court had no authority to modify the original decree and require Dorothy to maintain the health insurance and pay the unreimbursed medical expenses in accordance with rule 9.10. We disagree. James's application to modify the decree stated there was one minor child remaining for the purposes of child support and that he requested the court to modify the decree in an appropriate fashion. In his prayer, he asked the court to "set forth the child support obligation on behalf of Molly and the court should render other relief as is just and equitable in the premises."

The issuance of a child support order is governed by Iowa Code section 598.21(4)(*a*) and provides that all orders of support shall include "as child medical support a health benefit plan ... if available to either parent at a reasonable cost." Iowa Code § 598.21(4)(*a*) (2001). By putting child support at issue, the parties put child medical support at issue.

■ At trial, the evidence confirmed Dorothy was providing medical insurance for the children. The child support guide-

line worksheets prepared by James and Dorothy both showed Dorothy as taking a deduction for medical insurance premiums in the sum of $7416 from her net income, while showing no such deduction for James. The parties requested and the court used these deductions to calculate child support under the guidelines. Neither party presented any evidence that Dorothy should not continue to pay the medical insurance. The evidence shows a health benefit plan was available to Dorothy at a reasonable cost, and she should therefore continue to provide this insurance. Finally, because Dorothy is the custodial parent, the child support guidelines require Dorothy to be responsible for the first $250 per year per child of uncovered medical expenses up to a maximum of $500 per year for all children and for the parties to share any uncovered medical expenses in excess of $250 per child or a maximum of $500 per year for all children in proportion to their respective net incomes.

## VII. Disposition.

We vacate the decision of the court of appeals and affirm the district court decision as modified by this opinion. We modify the district court order to include a $300 monthly cash allowance for Abby and her sorority dues in the calculation of the postsecondary education subsidy for Abby. James and Dorothy shall reimburse Abby for past due amounts within ninety days of the filing of this decision.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.